UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JAMES S.[1], | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 1:20cv262 |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) as provided for in the Social Security Act. 42 U.S.C. § 423(a), § 1382c(a)(3). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

---

[1] To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield, supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since March 12, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease (DDD) of the cervical and lumbar spine, and polymyositis/dermatomysitis (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except as reduced by the following. The claimant can occasionally climb, balance, stoop, kneel, crouch, or crawl. The claimant must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, dusts, odors, gases, and poor ventilation. Work with an option to sit or stand, with changing positions no more frequently than every 30 minutes, while remaining on task. With work that can be learned in 30 days or less, with simple routine tasks.

6. The claimant is capable of performing past relevant work as an unskilled pinner of printed circuit boards (DOT 699.685-046) performed at a medium exertion per the DOT, and at light exertion by the claimant. However, further testimony of the vocational expert, as it relates to this specific job description within the DOT, indicates that based on the expert's experience in job analysis, research, and job placement, this job is now performed with computers and other equipment at the light exertional level. The expert explained that performance of this job is now with physically smaller and lighter computers and equipment than when the DOT was written and classified the job at medium exertion. Further, testimony of the expert specifically indicates as to the percentage of jobs now performed at light vs. medium exertion, such would now include most of the jobs within this DOT classification. As a result, and more typical of how the claimant actually performed his past relevant work at light exertion verses [sic] the original DOT classification for medium exertion work, this job now rarely requires lifting of 15-20 pounds. In finding the expert's testimony consistent with and supportable of her experience in analysis, research and job placement, the expert's testimony is persuasive (Exhibit 18E and her testimony). Therefore, the undersigned finds the claimant's past relevant work does not require the performance of work-related activities precluded by the residual functional capacity assigned herein (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 12, 2017, through the date of this decision (20 CFR 404.1520(f)).

3

(Tr. 17-27).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on March 25, 2021. On May 3, 2021, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on May 18, 2021. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be affirmed.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step four was the determinative inquiry.

Plaintiff was born in July 1960 and was 57 years old when he alleged he became disabled in

March 2017 (Tr. 72, 180). He graduated from high school in 1978 (Tr. 206 ). His earnings record shows he consistently worked and earned a solid wage from 1979 forward (Tr. 187- 94). Plaintiff reported that his primary occupation during the fifteen years prior to the start of his disability was as a production worker in a factory (Tr. 206). He stopped working in March 2017. (Tr. 205).

In a January 2018 "Report of Contact," an SSA memorialized a phone call in which Plaintiff described his work at a circuit board factory (Tr. 234). The job required him to stand 8 to 10 hours per day, and he operated "a universal axial sequencer machine" (Tr. 234). The job required him to "stand and twist and all day" (Tr. 234). The report further states:

> Constantly inserting board into the box, rotating between 5 to 8 machines every other week. Had to work really fast. Each board was less than 1#, older style boards for older gas furnaces. Almost like a CNC machine. Inserted about a thousand per day. Heaviest item he lifted was 30# reel for a terminal machine, had to lift about 1-2 x per day. Also operated a radial machine, the box was 4 x the size of a refrigerator, inserted board into template. Occasionally had to stoop or crouch, to pick up a part he had dropped. When operating the sequencer he had to restock parts below waist level several times per day. Was never a lead worker or supervisor. Had to set up some of the machines, had to set up sequencer machine with 30 or 40 reels that weighed about 5# each, had to set up every couple weeks. Did not have to do any paperwork. (Tr. 234).

In a second "Report of Contact" in March 2018, Plaintiff clarified that he lifted only about fifteen pounds not thirty (Tr. 235). He also said "there actually were four different machines that he rotated between, and these rotations lasted 7 days; it was all the same job, the same pay, just each week you were assigned a machine, and that changed from week to week." (Tr. 235). The machines included a sequencer, the axial, the terminal, and the radial (Tr. 235).

In a vocational rationale from March 2018, a vocational specialist determined that Plaintiff's job involved "rotat[ing] between 4 stations on a routine basis," and he believed the job

5

was comprised of the three separate occupations: DOT #726.382-010 (Sequencing Machine Operator), DOT #726.685-014 (Insertion Machine Tender, Electronic Components), and DOT #726.687-038 (Preassembler, Printed Circuit Board) (Tr. 236). In February and August 2018, the state agency determined Plaintiff's past work was a "combination job" consisting of occupations falling under several DOT numbers including 726.382-010, 726.685-014, 726.687-038, and 726.685-014 (Tr. 81, 98). All the jobs were at the light exertional level, but the state agency did not believe he could perform the requirements of all the listed jobs (Tr. 81, 98, 236).

At the administrative hearing, Plaintiff testified he performed essentially the same job from 2004 through 2013 when he stopped working (Tr. 41). He described that job as a "manufacturing associate" where he worked on a production line with a group of other workers adding parts to an electronic board (Tr. 42). The vocational expert asked Plaintiff to provide additional information about his past work because the only information she had indicated he worked in "production work, factory" (Tr. 42). The VE then labeled Plaintiff's past work as a pinner, printed circuit board, Dictionary of Occupational Titles (DOT) #699.685-046, which is classified as an SVP 2 and medium exertional level in the DOT (Tr. 64). However, she explained the job was performed at the light exertional level by Plaintiff (Tr. 64-65). The VE testified that an individual with Plaintiff's vocational profile and the RFC stated in the decision could perform the job as he previously performed it (Tr. 65). She also explained that due to changes in technology, she believed the job was rarely performed at the medium exertional level and was more accurately classified as a light exertional level occupation (Tr. 65-66).

In support of remand, Plaintiff first argues that the ALJ erred in finding that he could perform his past relevant work. At step four, the ALJ must determine whether the claimant has

6

any past work that is relevant and if so, whether he can perform that work with the RFC supported by the record. *See* 20 C.F.R. § 404.1565(a); SSR 82-62. Moreover, the ALJ must make the administrative past-relevant-work (PRW) findings and may not "defer uncritically to a VE's conclusion." *See John L. v. Saul*, N0. 4:19cv18, at *37 (N.D. Ind. Jan. 23, 2020). Plaintiff argues that the ALJ uncritically deferred to the VE, resulting in an incomplete and inaccurate assessment of Plaintiff's past work and his ability to perform that work.

At the hearing, the ALJ inquired about Plaintiff's past relevant work and the VE specifically requested that Plaintiff describe his past job for clarification (Tr. 42). Plaintiff testified that he worked the same job, an entry level manufacturing associate, from 2004 until the plant closed in 2017 (Tr. 40). Plaintiff testified that at this job he built circuit boards for heating and cooling units (Tr. 41). Plaintiff explained that he was a manufacturing associate where he inserted parts into seven machines and built the boards (Tr. 42). When further questioned by the ALJ, Plaintiff provided a detailed report of his work duties, noting that he rarely lifted 10-15 pounds and that "it was extremely light work" (Tr. 41). He said that he would put terminals, test pins, diodes, and connectors into individual components before the part progressed through the factory (Tr. 42). Plaintiff noted that his job was not the very first stop for the part, and the parts progressed through the factory once he was finished with his duties (Tr. 42).

Based on Plaintiff's testimony, the VE classified Plaintiff's past relevant work as an unskilled pinner of printed circuit boards, which the Dictionary of Occupational Titles (DOT) classifies as a medium-level job, and which Plaintiff performed as a light-level job (Tr. 27, 64-69). The ALJ relied on the vocational expert's testimony in finding that Plaintiff could perform past relevant work as a pinner of printed circuit boards as actually performed and that, therefore,

Plaintiff was not disabled (Tr. 27, 66-69). 20 C.F.R. § 404.1560(b)(3).

Thus the record shows that the ALJ carefully considered the physical and mental demands of Plaintiff's past work (Tr. 21, 26-27). Also, the VE's testimony regarding Plaintiff's past relevant work was an accurate reflection of Plaintiff's testimony (Tr. 40-70).

At the hearing, Plaintiff and his representative did not challenge the VE's qualifications as an expert, nor did they challenge her classification of Plaintiff's past relevant work. *See Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008)(an ALJ is entitled to rely on unchallenged VE testimony). Plaintiff asserts that the VE likely did not have all of the information developed by the State agency regarding jobs. However, Plaintiff did not ask the VE to consider any additional tasks or duties, nor did he ask the VE to consider whether Plaintiff's past relevant work was a composite job.

Composite jobs have "significant elements of two or more occupations and, as such have no counterpart in the DOT." Social Security Ruling (SSR) 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982). However, "a former job performed . . . by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy." *Id*. "If the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id*. Therefore, that a job entails responsibilities beyond those outlined in the DOT does not necessarily make it a composite job. Further, the ALJ found that Plaintiff could perform his past work as he actually performed it, not as the job is described in the DOT (Tr. 27). Thus, Plaintiff's argument that the ALJ failed to consider a

8

composite job has no merit.

At the hearing, Plaintiff provided a full report of his job title, description, and duties. (Tr. 27, 41-42). The VE relied on this testimony at the hearing, on her experience as an expert, as well as on the record (Tr. 27, 66-69). Plaintiff fails to show that the VE did not consider any part of the testimony. Plaintiff points to January and March 2018 reports of contact documents to support his argument. However, within the March 2018 report, Plaintiff stated that his work was generally very light work and the reel that he had to lift was 15 pounds, not 30 (Tr. 235). He also noted that his jobs with the machines were "all the same job, the same pay" but explained that he was assigned to a machine that changed from week to week (Tr. 235). The VE considered the record and Plaintiff's testimony. It was reasonable for the VE to assume that Plaintiff's lifting, standing, twisting, machine operation, machine insertion, or electronics assembly were not significant elements of a separate occupation and thus this work did not need to be considered as a composite job. SSR 82-61, 1982 WL 31387, at *2.

Clearly, the VE properly concluded that Plaintiff could perform all of the demands of his past work as he performed it. Plaintiff does not argue how or why he would not be able to perform any aspect of his past work under his RFC. *See* 20 C.F.R. § 404.152(a)(4)(i)-(iv); *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir 2008)(the claimant has the burden at step four to establish that he cannot perform his past relevant work). Thus, the ALJ appropriately relied on the testimony of the VE who based her opinions on the record, on Plaintiff's testimony at the hearing, and on her professional experience (Tr. 27). As the ALJ properly determined that Plaintiff could perform his past work, she did not need to proceed to step five. See 20 C.F.R. § 404.1520(a)(4)(iv). Thus, there is no basis for remand on this issue.

9

Next, Plaintiff argues that the ALJ erred in evaluating the opinion evidence submitted by Lloyd Williams, M.D., Plaintiff's long-time primary care physician. (Tr. 26). An ALJ is not permitted to discount opinion evidence supporting a claim of disability simply because she does not agree with the treating doctor. *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *Herrmann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014).

Dr. Williams wrote that Plaintiff had been his patient for over 20 years (Tr. 498, 605, 616). He explained Plaintiff persisted in working until 2017 despite being diagnosed with dermatomyositis and polymyositis in 1993. In addition to his long-term, progressive conditions, Plaintiff had also developed degenerative disc disease (cervical and lumbar) that hindered his ability to function. Plaintiff fatigued easily and struggled lifting more 10 pounds. At times, even walking and sitting were challenging. He had medication side effects that contributed to his fatigue and weakness. All of his conditions were progressive. (Tr. 498, 605, 616). The ALJ determined that Dr. Williams's July 2017, November 2018, and June 2019 opinions were "not consistent with nor supportable of the overall evidence" (Tr. 26).

For claims filed on or after March 27, 2017 – such as Plaintiff's claim here – the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from medical sources. 20 C.F.R. § 404.1520c. When a medical source provides one or more medical opinions, the ALJ will consider those medical opinions from that medical source together using the following factors, as appropriate: supportability, consistency, relationship with the claimant, length of the treatment relationship, specialization, and other factors (such as evidence showing that the medical source

has familiarity with other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements). 20 C.F.R. § 404.1520c(a), (c)(1)-(c)(5). The most important factors the ALJ considers when evaluating the persuasiveness of medical opinions are supportability and consistency. 20 C.F.R. § 404.1520c(a).

This Court finds that the ALJ properly evaluated Dr. Lloyd Williams' opinion and adequately explained why she found it to be inconsistent with the record, unsupported by the overall evidence, and therefore unpersuasive (Tr. 26, 72-73, 377-78, 381-82, 386-87). First, the ALJ noted that Plaintiff's record reflected mostly normal clinical findings and unsupported reports of clinical worsening, despite Dr. Williams' assessment and Plaintiff's complaints (Tr. 23, 372-73, 377-78, 381-82, 386-87, 539-87, 609-15). Second, the ALJ noted that Dr. Williams' assessments were inconsistent with the rheumatology consultative review by Dr. Chester Oddis, which was supported by the record (Tr. 23, 26). Finally, the ALJ took note of the fact that Dr. Williams' finding was inconsistent with Plaintiff's testimony and that his work cessation was unrelated to allegations of disabling symptoms and limitations (Tr. 26, 41-42).

The ALJ carefully considered Dr. Williams' evaluations but found them to be inconsistent with clinical findings (Tr. 26, 372-73, 377-78, 381-82, 386-87, 539-87, 609-15). Plaintiff contends that the ALJ made assumptions about the medical evidence that were unfounded. However, the ALJ accurately stated what was noted in the record (Tr. 26). As the ALJ indicated, Plaintiff's rheumatology treatment record supports full upper and lower extremity muscle strength; no muscle weakness; and retained range of motion, despite Dr. William's opinion (Tr. 26, 372-73, 377-78, 381-82, 386-87, 539-87, 609-15). Additionally, the record showed no inflammatory joint swelling (including in the hands bilaterally), and no crepitus (grating sound or sensation produced

11

by fiction), tenderness, or pain (Tr. 26, 341-43, 349-50, 361). Plaintiff's treatment records from June 2017 reflected a normal neurologic examination with normal sensory findings; normal motor findings; and no acute distress (Tr. 26, 349-50). Plaintiff demonstrated full range of motion in areas such as his shoulders, elbows, hand, spine, hips, ankle, and feet bilaterally (Tr. 26, 349-50). Plaintiff's muscle enzymes were also noted to be under better control and his muscle strength was within normal limits (Tr. 26, 349-51). Plaintiff's examination in September 2017 also reflected sensory, motor, and musculoskeletal findings within normal limits (Tr. 26, 341-43).

Plaintiff's treatment records from March 2018 showed similar results (Tr. 26, 541). Plaintiff's physical examination during that time also did not reflect any inflammatory joint swelling in his hands or feet bilaterally or tenderness in his spine (Tr. 26, 541). Additionally, the examination findings did not show any muscle weakness and his motor strength was normal (Tr. 26, 541). As the ALJ pointed out, Dr. Williams' own examination in November 2017 did not reflect acute distress or any pulmonary deficit (Tr. 25, 497-500, 516-21). In March 2018, x-rays of Plaintiff's lumbar spine showed non-specific soft tissue calcification suggestive of dermatomyositis, but did not reflect any acute disease, or degenerative changes in the lower thoracic or lumbar region (Tr. 25, 560). In April 2019, Plaintiff's cervical MRI reflected only mild to moderate findings (Tr. 25, 606-08).

Therefore, the ALJ adequately found that the clinical findings within the record did not support Dr. Williams' opinion regarding Plaintiff's limitations (Tr. 25). *See Payne v. Colvin*, No. 4:15-cv-43-JVB-PRC, 2017 WL 655863, at *3 (N.D. Ind. Feb. 17, 2017) ("This Court . . . has previously upheld an ALJ's decision to reject an examining doctor's conclusions where the ALJ found the doctor's conclusions were inconsistent with his own examination findings and the

12

medical evidence of record . . . these sorts of inconsistency determinations are not medical opinions that the doctor is wrong; rather they are legal determinations of how to weigh conflicting evidence").

The ALJ indicated that she found Dr. Williams' opinion to be inconsistent with the August 2017 consultative rheumatology report of Chester Oddis, M.D. (Tr. 23, 609-15). The ALJ explained that Dr. Oddis' opinion regarding Plaintiff's alleged muscle strength and weakness was supported by treatment records (Tr. 23, 609-15). Dr. Oddis completed a review of Plaintiff's overall record and acknowledged the presence of autoimmune dermatomyositis and myopathy (Tr. 24, 609-15). However, Dr. Oddis noted that he did not see any documented objective decrease in muscle strength noted in the medical record (Tr. 24, 609-15). Additionally, as the ALJ noted, Dr. Oddis was not concerned about Plaintiff's shortness of breath (Tr. 24, 609-15).

Dr. Oddis opined that radiology reports might be helpful to greater assess Plaintiff's symptoms (Tr. 24, 609-15). However, the radiology reports completed after Dr. Oddis' assessment reflected only mild to moderate findings (Tr. 24, 560, 606-08, 609-15). The ALJ found Dr. Oddis' opinion to be supported with the overall evidence and therefore persuasive (Tr. 24). As the ALJ noted, Dr. Williams' assessment was inconsistent with Dr. Oddis' findings regarding Plaintiff's reported decrease in muscle strength as well as the clinical findings referenced above (Tr. 24).

The ALJ also noted that Dr. William's assessments were not supported by Plaintiff's testimony (Tr. 26, 41, 42). The ALJ pointed to Plaintiff's reported ability to complete tasks such as mowing the lawn, doing laundry, taking out the trash, and attending to household chores, despite his allegations of decreased muscle strength (Tr. 19, 217-224, 225-33, 254-61, 262-70,

13

508). The ALJ also pointed to Plaintiff's reports of living alone and being independent in attending to personal and self-care needs despite his symptoms (Tr. 19, 218, 225-33, 254-61, 262-70, 508). At the hearing, Plaintiff initially denied limits in lifting, but then reported an ability to lift 10-15 pounds of groceries (Tr. 22, 49). Plaintiff also testified and stated within the record that he was barely "hanging on" (Tr. 22, 63). However, Plaintiff also testified that he had maintained perfect attendance for twenty years, despite his impairments and associated symptoms (Tr. 22, 63). Specifically, Plaintiff testified that he used 120 hours of leave to get out of work and working weekends, which allowed him to maintain perfect attendance for almost 20 years (Tr. 22, 63, 527-29). Thus, the ALJ noted this ability to sustain work, despite his impairments (Tr. 23).

The ALJ also took note of the fact that Plaintiff's work cessation was unrelated to allegations related to disabling symptoms or limitations (Tr. 26, 63). As the ALJ stated, Dr. Williams' report suggested that Plaintiff's job ended due to inability to sustain fulltime work (Tr. 24-25). However, the factory where Plaintiff worked closed in 2017 (Tr. 24-25). Additionally, before the factory closed, Plaintiff was reportedly working upwards of 60-70 hours a week, which exacerbated his symptoms (Tr. 26, 611). Plaintiff contends that his good work record was entitled to substantial credibility. While "a consistent work history weighs in favor of a positive credibility finding, it is still just 'one factor among many, and it is not dispositive.'" *Summers v. Berryhill*, 864 F.3d 523, 529 (7th Cir. 2017)(citing *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016)). Even though this factor was not addressed in the hearing decision, "an ALJ is not statutorily required to consider a claimant's work history." *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016).

Plaintiff also argues that the ALJ did not consider the progressive nature of Plaintiff's

illness; the fact that he developed degenerative disc disease that exacerbated his symptoms as he aged; or that he continued working despite his deteriorating health until he was barely hanging on. To the contrary, the ALJ did consider Plaintiff's longstanding rheumatology symptoms and complaints, as well as symptoms related to his degenerative disc disease, and pulmonary complaints (Tr. 27). Moreover, the ALJ included limitations within the RFC such as limitation to light exertion with allowance to sit, stand, and change positions, as well as limitation to pulmonary irritants in order to address Plaintiff's physical limitations (Tr. 27).

Plaintiff also argues that the ALJ failed to consider his mental limitations within the RFC, although they were nonsevere. However, as the ALJ stated, she did in fact consider Plaintiff's subjective report of possible rheumatology symptoms of brain fog as well as Plaintiff's nonsevere impairment of anxiety (Tr. 26). The ALJ thus limited Plaintiff to unskilled work involving simple, routine tasks that can be learned in 30 days or less (Tr. 26). As a result, the ALJ limited Plaintiff even more than the State agency-determined capacity for semi-skilled to skilled work (Tr. 26, 82, 98). *See Borkowski v. Colvin*, No. 3:14-cv-269-CAN, 2015 WL 3867248, at *5 (N.D. Ind. June 23, 2015)(noting that the ALJ afforded a claimant considerable benefit of the doubt by finding her to be substantially more limited than the state agency consultants did).

In conclusion, the ALJ's decision reflects her careful review of the record showing that Plaintiff had physical and mental limitations, but they did not preclude him from performing his activities of daily living or his past relevant work. Therefore, substantial evidence supports the ALJ's findings. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

<u>Conclusion</u>

On the basis of the foregoing, the decision of the Commissioner is hereby AFFIRMED.

Entered: May 24, 2021.

s/ William C. Lee
William C. Lee, Judge
United States District Court
